The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with respect to the issue of the type of compensation due and with other minor technical modifications.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and after the hearing as:
STIPULATIONS
1. On March 11, 1991, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date the employer-employee relationship existed between the parties.
3. As of said date the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
4. The alleged injury giving rise to the plaintiff's claim occurred on March 11, 1991.
5. The issues to be determined in this case are:
 a. Did the plaintiff sustain an injury by accident arising out of and in the course of his employment with the defendant on March 11, 1991; and,
 b. If so, are the injuries of which the plaintiff complains caused by said accident; and,
 c. If so, what average weekly wage was the plaintiff earning on March 11, 1991; and,
d. If so, to what compensation is the plaintiff entitled under the Act.
6. The parties further stipulated into the record a document of stipulations, the deposition of Dr. Albert Munn dated March 29, 1994, OSHA regulations, in-house safety guidelines, defendant's medical records with reference to the plaintiff, plaintiff's employment file with the defendant, the Commission file and defendant's response to plaintiff's Interrogatories.
7. The plaintiff last worked for the defendant on March 11, 1991, received his last payroll check on March 26, 1991, and filed a Form 18 on October 14, 1992.
8. At the hearing on April 12, 1994 and June 2, 1994, the parties introduced the following exhibits:
 a. Defendant's Exhibit 1, marked D1, consisting of Defendant's First Set of Interrogatories with Answers dated May 26, 1993.
 b. Defendant's Exhibit 2, consisting of N.C. Division of Mental Health dated August 25, 1988 through January 20, 1991, and Employee Injury Report dated May 17, 1988.
 c. Defendant's Exhibit 3, consisting of Employee Health's Attendance Record for the month of March 1991.
 d. Defendant's Exhibit 4, consisting of a Report of Medical Examination dated June 4, 1990.
 e. Defendant's Exhibit 6, consisting of an Application for Short-Term Benefits with a received date of June 26, 1991.
 f. Defendant's Exhibit 7, consisting of an Industrial Commission Form 19 dated October 23, 1992.
 g. Defendant's Exhibit 8, consisting of an Attendance Record of Edna Reynolds.
 h. Plaintiff's Exhibits 1 through 4, consisting of medical records of Kaiser Permanente dated March 11, 1991 through March 12, 1991. Subsequent to the hearings on April 12, 1994 June 2, 1994, the parties entered Kaiser Permenate's medical records with respect to the plaintiff for the period March 1990 through November 1991 into the record with respect to which all motions and objections have been ruled upon in accordance with the law and this Opinion and Award.
 i. Plaintiff's Exhibits 5 through 6, consisting of medical records of Duke University Medical Center dated March 12 through 13, 1991.
j. Plaintiff's Exhibit 7, consisting of a letter dated May 22, 1991.
 k. Plaintiff's Exhibits 8 through 22, consisting of employee's health records.
l. Plaintiff's Exhibit 23, consisting of an Infection Control Manual.
m. Plaintiff's Exhibit 24, consisting of OSHA Rules and Regulations.
 n. Plaintiff's Exhibit 25, consisting of Standards of Infection Control Manual.
 o. Plaintiff's Exhibit 28, consisting of Defendant's Response to Plaintiff's Interrogatories dated February 23, 1994.
 p. Plaintiff's Exhibit 30, consisting of a photograph of the plaintiff, to which the defendant objects.
 q. Plaintiff's Exhibit 31, consisting of a Subpoena issued March 23, 1994.
 r. Plaintiff's Exhibit 32, consisting of North Carolina State Employees' Safety Health Handbook, to which the defendant objects.
 s. Plaintiff's Exhibit 33, consisting of an article from the publication "Living Positively" Volume 2, Number 2, July 1993, entitled Memory Loss, to which defendant objects.
 EVIDENTIARY RULINGS
1. Defendant's objections with respect to plaintiff's Exhibit 33 and excerpts from the Attorney's Handbook of Medicine, are sustained and said publications are not allowed into evidence.
2. Plaintiff's motion for the assessment of penalties and attorney fees against the defendant is hereby, and the same shall be, denied.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The plaintiff, who was 30 years of age at the time of the hearing, was afflicted with congenital glaucoma from birth. Sometime prior to March 11, 1991, he became HIV positive and developed the physical disorder of Acquired Immune Deficiency Syndrome.
2. In 1989 the plaintiff became employed by the defendant in its housekeeping department and in January 1991 was transferred to the laundry department because his visual difficulties negatively impacted his duties as a housekeeper.
3. As a laundry worker the plaintiff's duties involved, at the beginning of his shift in the early morning, traveling about the defendant's premises on a truck gathering up the bags of soiled linen and garments which were discharged from the hospital complex to the outside through laundry shoots. These bags were carried to the main laundry area where the bags were dumped out on tables and sorted into various bins for laundering. The plaintiff participated in this process by standing at a table containing the soiled laundry and sorting it into the respective bins.
4. During the evening of March 10, 1991, the plaintiff began to suffer distress in his left eye which continued to the next morning of March 11, 1991.
5. The next morning, March 11, 1991, the plaintiff reported to work at seven a.m. at which time he worked for approximately one hour during which time, as he was performing the duties of his employment in sorting soiled laundry, he was struck on the head and left eye with a soiled piece of laundry. He was taken by two of his friends to Kaiser Permanente, a medical provider which provided medical care for employees of the defendant, where he was medically examined, found to have an abrasion of the cornea of his left eye as well as increased pressure in his left eye. He was referred to an ophthalmologist who further rendered medical care and treatment for the plaintiff's glaucoma and the abrasion of the cornea of his left eye.
6. On March 12, 1991, the plaintiff reported to Duke Medical Center, where prior to March 11, 1991, he had been treated for glaucoma and a cornea transplant of his right eye, at which time he was medically diagnosed as suffering from Pseudomonas infectious keratitis (hereinafter Pseudomonas) in the left eye for which he was hospitalized for intensive topical antibiotic treatment.
7. On March 26, 1991, the plaintiff underwent a scleral keratoplasty to resolve the infection in his left eye. Upon discharge from Duke Hospital on March 28, 1991, plaintiff was medically declared legally blind. As a result of the infection and necessary surgery on March 26, 1991, plaintiff is industrially blind in his left eye.
8. The disease of Pseudomonas is caused by bacteria more prevalent in organic carbon. Furthermore, organic carbon, although prevalent in the general environment, is more prevalent in a hospital setting particularly in the soiled laundry generated by a hospital environment.
9. The plaintiff, having contracted Acquired Immune Deficiency Syndrome, was less able to counter the bacteria causing Pseudomonas and was at an increased risk of contracting Pseudomonas due to the prevalence of organic carbon in the soiled laundry which he was handling in the defendant's laundry department as compared to the public generally.
10. On March 11, 1991, the plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant in the nature of an abrasion of the cornea of his left eye which resulted in a Pseudomonas infection of the left eye and ultimately legal and industrial blindness of the left eye.
11. Prior to March 11, 1991, the plaintiff had congenital glaucoma causing him to be industrially blind in his right eye.
12. Due to his visual impairment subsequent to March 11, 1991, the plaintiff conducted his business affairs through friends and volunteers, who assisted him as best they could, but were unable to adequately present his claim under the North Carolina Workers' Compensation Act until October 14, 1992, when the Form 18 was filed. Based on the lack of investigation and evaluation by defendant after receiving notice on October 14, 1992, defendant is not prejudiced by the October 14, 1992 notice.
13. The plaintiff has lost time from work as a result of the injury of March 11, 1991 and as a further result of the injury is not capable of earning the same or greater wages he was making at the time of the injury by accident in the same or any other employment.
14. The plaintiff applied for short-term disability benefits on June 26, 1991 and has been paid such benefits at the defendant's expense.
15. The plaintiff was earning an average weekly wage of $241.90 on March 11, 1991.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 11, 1991, the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant in the nature of an abrasion of the cornea of his left eye which resulted in a Pseudomonas infection of the left eye and ultimately legal and industrial blindness in the left eye. N.C. Gen. Stat. 97-2 (6).
2. Due to the plaintiff's legal and industrial blindness and the assistance given to the plaintiff by volunteers and friends in handling his claim, the failure of the plaintiff to strictly comply with the notice provisions of the Act is excusable and the defendant has not been prejudiced by plaintiff's failure to timely give notice. N.C. Gen. Stat. § 97-22.
3. By reason of the congenital loss of vision in plaintiff's right eye resulting in industrial blindness in his right eye and the compensable loss of vision resulting in industrial blindness in plaintiff's left eye, plaintiff is totally disabled. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to total disability compensation benefits at the rate of $161.33 for the loss of vision in his left eye in combination with the pre-existing congenital blindness in his right eye beginning March 26, 1991 and continuing until such time as plaintiff returns to work, sustains a change of condition or further Order of the Commission. Because plaintiff's right eye condition is not work-related, plaintiff has not received any compensation for his right eye. Such amount as has accrued due to his left eye injury shall be paid in a lump sum subject to counsel fee hereinafter approved. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendant pay all medical and rehabilitation expenses which are necessary to effect a cure, give relief or lessen the period of disability, including any necessary diagnostic tests, resulting from plaintiff's injury by accident of March 11, 1991. N.C. Gen. Stat. § 97-25.
8. The defendant is allowed a credit against the compensation herein awarded for short-term disability benefits paid to the plaintiff subsequent to March 11, 1991. N.C. Gen. Stat. § 97-42.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. The defendant shall pay to the plaintiff total disability compensation benefits at the weekly rate of $161.33 as of March 26, 1991, less the attorney fee and credit hereinafter provided, and continuing until such time as plaintiff returns to work, sustains a change of condition or further Order of the Commission. Any accrued amount remaining after the deduction of the attorney fee and the credit shall be paid to plaintiff in lump sum. Thereafter, defendant shall pay to plaintiff weekly benefits at the rate of $161.33 less the approved attorney fee of 33 and 1/3 percent per month which payment arrangement shall be determined by the parties.
2. The defendant shall pay all past, present and future medical expenses which are necessary to effect a cure, give relief or lessen the period of plaintiff's disability which are causally related to his March 11, 1991 injury by accident, including any necessary diagnostic tests, when the same have been submitted pursuant to the approved Industrial Commission procedure.
3. The defendant is allowed a credit against the compensation herein awarded for disability benefits paid to the plaintiff subsequent to March 11, 1991.
4. An attorney fee of 33 and 1/3 percent of the compensation herein allowed, less the credit allowed, is hereby approved and awarded to Gregory P. Chocklett, to be paid directly him in a lump sum from compensation accrued and thereafter monthly by agreement of the parties.
5. Defendant shall pay interest to plaintiff since the date of the April 12, 1994 hearing which amount shall not be subject to an attorney fee. N.C. Gen. Stat. § 97-86.2.
6. The defendant shall pay the costs due this Commission.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER